# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

STEPHEN OLWELL,                              Civil No. 01-1481 (JRT/FLN)

                        Plaintiff,

v.

                                        **MEMORANDUM OPINION AND**
MEDICAL INFORMATION                     **ORDER ON DEFENDANTS'**
BUREAU, a/k/a MIB Group, Inc.;          **MOTIONS FOR SUMMARY**
LINCOLN BENEFIT LIFE                    **JUDGMENT**
COMPANY, a/k/a Allstate Financial
Corporation,

                        Defendants.

---

Thomas J. Lyons, Sr., THOMAS J. LYONS & ASSOCIATES, P.A., 342
County Road D, Little Canada, MN 55117.

Patrick J. Rooney and Patrick Alan Reinken, RIDER BENNET EGAN &
ARUNDEL, 2000 Metro Center, 333 South 7th Street, Minneapolis, MN
55402, for defendant Medical Information Bureau.

Laura L. Myslis, GISLASON & HUNTER, P.O. Box 5297, Hopkins, MN
55343-2297, for defendant Lincoln Benefit Life Company.

Plaintiff filed this action against defendants Medical Information Bureau ("MIB")

and Lincoln Benefit Life Company ("Lincoln Benefit") under the Fair Credit Reporting

Act ("FCRA") alleging that they falsely reported that he is a smoker. Plaintiff claims this

false report caused him to be denied a most-favorable 20-year renewable life insurance

FILED _____
                    JAN 0 7 2003
          RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. _____
DEPUTY CLERK _____

policy.   Plaintiff also asserts claims for defamation and invasion of privacy ("common law claims").   Defendants have each moved for summary judgment on plaintiff's FCRA claims and common law claims.   For the reasons discussed below, the Court grants defendant MIB's motion for summary judgment on the FCRA § 1681e(b) claim, and grants both defendants' summary judgment motions on plaintiff's common law claims. In all other respects, defendants' motions are denied.

## BACKGROUND

Plaintiff applied for a life insurance policy from Lincoln Benefit in October 1999. As part of the application, plaintiff submitted blood and urine samples.   Those samples were sent to a testing lab, Osborn Laboratories ("Osborn").   Osborn tested the samples for various substances, including cotinine.   Plaintiff's urine tested positive for cotinine, which indicates that he had experienced nicotine use within a certain time prior to the test.   Osborn retested the sample, and again it was positive.   Osborn then informed Lincoln Benefit of the positive result, and Lincoln Benefit reported the results to MIB.

Defendant MIB is a not-for-profit association of life insurance companies of which Lincoln Benefit is a member.   MIB collects information from member companies and, when authorized, provides that information to other life insurance member companies.   MIB thus prevents potential fraud from insurance applicants who might attempt to conceal or omit information relevant to insurance underwriting.   For this summary judgment motion, MIB concedes that it is a "consumer reporting agency" ("CRA") as defined by the FCRA.

Shortly after obtaining the positive test results, in January of 2000, Lincoln Benefit offered plaintiff a "smoker" policy for $250,000 coverage at a cost of around $1,000 per year.[1] Plaintiff did not purchase the policy. Lincoln Benefit also informed plaintiff about his rights under the FCRA.

Almost a year after turning down the Lincoln Benefit policy, in December 2000, plaintiff applied for a life insurance policy through AIG[2] and again submitted a urine sample. Although the urine sample plaintiff provided in 2000 tested negative for cotinine, his 1999 result influenced the policy that AIG offered plaintiff. In January of 2001, AIG offered plaintiff a "standard plus" non-smoker's policy, at a rate of $450 per year for $250,000 coverage. The comparable Lincoln Benefit policy was $470 per year for the same amount of coverage, however, the AIG policy was guaranteed for only ten years, while the Lincoln Benefit policy would have been guaranteed for twenty years.

After realizing the 1999 test resulted impacted his insurability, plaintiff began to inquire about his consumer medical file. He wrote to MIB requesting information, and MIB responding by disclosing the report to plaintiff and informing him that he could seek a correction if he believed the information was incorrect. Upon reviewing the report, plaintiff believed that it contained an error. He then wrote to MIB requesting that MIB contact Lincoln Benefit to find out how to correct the mistake and restore his record. In March 2001, MIB forwarded plaintiff's letter to Lincoln Benefit. At that time MIB also

---

[1] Plaintiff testified that the policy was offered at $1,095 per year, while the insurance broker remembers that the policy was offered at $985.50. *See* Plaintiff's brief at 4 and MIB's brief at 6. This slight difference does not impact the Court's summary judgment decision.

[2] AIG is not a party to this action.

provided plaintiff a "Request for Reinvestigation" form and asked that he return it. MIB requested that Lincoln Benefit initiate a reinvestigation according to "MIB Policy and Procedures." MIB also provided plaintiff's record and a "Guide to Reinvestigation" to Lincoln Benefit.

In April Lincoln Benefit advised plaintiff that it had confirmed the results of the test with the testing facility and noted that the testing facility verified that the chain of custody was intact. Lincoln Benefit told plaintiff that it was their practice not to retest urinalysis when the chain of custody was intact. MIB then informed plaintiff that he could contest the accuracy of the MIB report, but plaintiff did not do so. MIB also informed plaintiff that he could submit a concise statement setting forth what he believed was the correct relevant or fair information, and stating the reasons why he disagreed with MIB's refusal to correct, amend, or delete recorded personal information. Plaintiff did not submit such a statement.

## ANALYSIS

### I.     The Fair Credit Reporting Act[3]

The crux of plaintiff's complaint under the FCRA is that defendant MIB failed to take reasonable steps to ensure the accuracy of the initial report (a violation of § 1681e(b)), and that both defendants subsequently failed to reinvestigate after he notified them of the alleged inaccuracy (a violation of § 1681i(a)(1)(A) and § 1681s-2(b)).

---

[3] 15 U.S.C. §§ 1681 *et seq.*

The FCRA gives consumers certain rights with respect to the credit information that is maintained and distributed about them, including the ability to receive a notice of an adverse action based on the credit information, to obtain a copy of the information, and to dispute the accuracy of that information. Consumer reporting agencies ("CRAs") must follow reasonable procedures to assure the maximum possible accuracy of the information concerning the individual whose consumer history is stored on their database. 15 U.S.C. § 1681e(b).[4]  In addition, CRAs are required to reinvestigate if a consumer notifies the agency of a dispute regarding the completeness or accuracy of information contained in a consumer's credit report.   15 U.S.C. § 1681i(a)(1)(A).[5] During the reinvestigation, the CRA is required to review and consider all relevant information submitted by the consumer within 30 days. *Id.* After the reinvestigation, the CRA must either correct the file, or if it finds no errors, allow the consumer to file a brief statement of the dispute, which must be included in subsequent consumer reports.   15 U.S.C. § 1681i(b), (c).

Agencies that furnish information to CRAs, such as defendant Lincoln Benefit, also have responsibilities under the FCRA.  Such agencies are required to conduct

---

[4] 15 U.S.C. § 1681e(b) states:  "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

[5] Section 1681i(a)(1)(A) states:

> If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5),

investigations pursuant to the requirements of § 1681i when the agencies receive notice that the information provided to the CRA has been disputed. 15 U.S.C. § 1681s-2(b)(1); *see also Bruce v. First U.S.A. Bank, Nat'l Ass'n*, 103 F. Supp. 2d 1135, 1142-43 (E.D. Mo. 2000) (discussing duties under § 1681s-2(b)(1) and the level of investigation required under § 1681s-2(b) and holding that the level of investigation required under § 1691s-2(b)(1) is equivalent to that required by § 1681i(a)).

The FCRA provides consumers with a cause of action for negligent noncompliance with §§ 1681e and 1681s-2(b), and permits the recovery of actual damages, costs, and attorney fees. 15 U.S.C. § 1681o; *see also Bruce,* 103 F. Supp. 2d at 1143 (holding consumers have private causes of action against furnishers of credit information who violate § 1681s-2(b)); *Campbell v. Baldwin,* 90 F. Supp. 2d 754, 756 (E.D. Tex. 2000) (same). *But see Carney v. Experian Info. Solutions, Inc.,* 57 F. Supp. 2d 496, 502 (W.D. Tenn.1999) (consumers do not have a private cause of action under §1681s-2(b)). Where the violation of the FCRA is willful, consumers are entitled to recover punitive damages in addition to the damages available for negligent noncompliance. 15 U.S.C. § 1681n; *see also Bruce,* 103 F. Supp. 2d at 1143.

## II.    Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

---

before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer."

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980). The nonmoving party may not merely rest upon allegations or denials in its pleadings, instead it must set forth specific facts by affidavits or otherwise show that there is a genuine issue for trial. *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002).

## III.   Reasonableness of Initial Procedures

CRAs must follow reasonable procedures to assure the maximum possible accuracy of the information concerning the individual whose consumer history is stored on their database. 15 U.S.C. § 1681e(b). Plaintiff suggests that it is not reasonable for defendant MIB to rely on information from its members when compiling reports on

consumers. He complains that MIB fails to supervise its members, and has no safeguards to ensure the reliability of information.

The reasonableness of procedures is usually a jury question. *See Crabill v. Trans Union*, 259 F.3d 662, 664 (7th Cir. 2001). However, section 1681e(b) does not impose strict liability on credit reporting agencies. *Spence v. TRW, Inc.*, 92 F.3d 380, 383 (6th Cir. 1996); *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151 (11th Cir. 1991); *Thompson v. San Antonio Retail Merchants Ass'n,* 682 F.2d 509, 513 (5th Cir. 1982). Therefore to survive a motion for summary judgment, a plaintiff must do more than allege that a report contained inaccuracies or that a defendant relied on inaccurate sources when compiling their reports. The plaintiff must offer specific facts that could allow a reasonable fact-finder to determine that defendant's procedures were not reasonable. In this case, plaintiff has not set forth specific facts that would allow a reasonable jury to find that defendant MIB's procedures were unreasonable.

Plaintiff's central complaint is that the cotinine test was inaccurate, and that MIB and Lincoln Benefit relied on that inaccurate test result in compiling his consumer medical report. Plaintiff does not, however, assert that the testing lab, Osborn, is an unreliable source. He puts forth no evidence that defendants had reason to question the veracity of the continine test result. In fact, the evidence before the Court shows that Osborn is an unusually reliable source. The error rate at the testing facility is exceptionally low; plaintiff does not dispute that the error rate was .000001% in 2001. Further, plaintiff does not dispute that the testing lab followed careful procedures to

ensure the chain of custody of the urine sample was intact, or that Osborn retested the sample after the initial positive result.

Where, as here, the reporting agencies have no reason to suspect their initial source was inaccurate, it would be unduly burdensome to require the agency to take additional steps to verify the accuracy of its initial source of information. *See, e.g., Henson v. CSC Credit Services,* 29 F.3d 280, 285 (7th Cir. 1994) (holding that it was reasonable, as a matter of law, for credit reporting agency to rely on information obtained from state court's judgment docket); *cf. Cushman v. Trans Union Corp.,* 115 F.3d 220, 224-26 (3rd Cir. 1997) (holding that where a consumer reporting agency relies on a reliable source, it does not have a duty to go beyond its original source unless a consumer alerts a consumer reporting agency to an alleged error).

Several circuits have reasoned that, as an initial matter, a CRA does not have a duty to investigate its sources of information, at least where those sources are reasonably reliable. *See Cushman,* 115 F.3d at 225; *Henson,* 29 F.3d at 286 (holding CRA not liable under § 1681e, as a matter of law, for reporting incorrect information obtained from a court's judgment docket). This Court concurs that absent any indication that the information in the consumer's report is inaccurate, § 1681e(b) does not mandate that the CRA go beyond the initial reported information when compiling the report.

In addition, plaintiff's argument improperly conflates the requirements of § 1681e(b) in preparing the initial consumer report, with those of § 1681i in reinvestigating disputed information. *See Cushman,* 115 F.3d at 225 (reasoning that § 1681e(b) and § 1681i(a) should not be read as to render the two sections duplicative of

each other).   The reasonable procedures required under section 1681e(b) are not identical to the reinvestigation procedures mandated by § 1681i(a). *See Cushman*, 115 F.3d at 225 (affirming the grant of judgment as a matter of law as to § 1681e(b), but finding judgment as a matter of law not warranted as to § 1681i).  Accepting plaintiff's argument would require that consumers be alerted to information **before** it is entered on their reports and that consumers further be given a chance to dispute the information **before** it reaches the report.  Not only are these requirements unduly burdensome, but also the plain language of § 1681e(b) imposes no such duties.  Instead, § 1681i grants consumers the right to voice disputes once the report has been issued.  Section 1681i imposes on CRAs the responsibility to investigate and correct information once it has been disputed.  Plaintiff's reading of the statute would, in effect, impose strict liability on reporting agencies, an imposition that is not supported by the plain language of the statute, and has been repeatedly rejected by courts. *Spence*, 92 F.3d at 383; *Cahlin*, 936 F.2d 1151; *Thompson*, 682 F.2d at 513.  The initial reporting of a test result, when the reliability of the source is not in question, is not unreasonable even if the consumer did not have an opportunity to challenge it.  Therefore, plaintiff's § 1681e(b) claim against defendant MIB does not survive summary judgment.

## IV.   Reasonableness of the Reinvestigations

Because §§ 1681i and 1681s-2(b)(1) impose different burdens than § 1681e(b), summary judgment, even if appropriate on a § 1681e(b) claim, may not be warranted on a § 1681i or § 1681s-2(b)(1) claim. *Cushman*, 115 F.3d at 225. Sections 1681i and 1681s-2(b)(1) require CRAs, and the agencies that furnish information to them, to reinvestigate

if a consumer notifies the agency of a dispute regarding the completeness or accuracy of information contained in a consumer's credit report.  15 U.S.C. §§ 1681i(a)(1)(A) and 1681s-2(b)(1).  In this case, plaintiff sent a letter to MIB on March 21, 2001 stating that he believed that he had been inaccurately characterized as a smoker.  MIB then forwarded the letter to Lincoln Benefit, with instructions to investigate.  Included in MIB's correspondence to Lincoln Benefit was a "guide to reinvestigation" that specified that Lincoln Benefit was to contact sources identified by the consumer who reasonably may be expected to have information directly relevant to the disputed item.  Although plaintiff provided names of sources, including his personal physician, neither defendant contacted any outside sources.  Instead, the extent of the reinvestigation was to contact the testing company, and verify that the chain of custody was intact and that the sample had been tested twice.

Plaintiff argues that the failure to contact outside sources illustrates the unreasonableness of the reinvestigation, and shows defendants willfully failed to comply with their own policies.  Defendants assert that the sources plaintiff cited were not "reasonably expected to have information directly relevant to the disputed item."  In essence, the parties each characterize the information in the file differently.  Plaintiff offered information about his status as a nonsmoker, while defendants focused on the more narrow issue of the results of the cotinine test.  It is clear, however, that the import of a positive test for cotinine is to assume that the applicant is a smoker.

The FCRA does not impose strict liability for all errors on reports.  *Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333 (9th Cir. 1995).  In addition, most of

the cases interpreting FCRA involve inaccurate credit information. Such information is both more likely to be incorrect than a medical test, and it is more amenable to verification once the consumer disputes it. Nonetheless, a reasonable jury could find that the procedures followed by MIB and Lincoln Benefit — specifically, the failure to contact outside sources — were unreasonable. As a result, summary judgment must be denied on this claim against both defendants.

## COMMON LAW CLAIMS

**I.    Preemption**

State-law privacy causes of action, such as defamation and invasion of privacy, are preempted by the FCRA unless plaintiff shows that the disclosures were made with "malice or willful intent to injure." 15 U.S.C. § 1681h(e).[6]  Summary judgment is appropriate on such claims where the record shows no malice or willful intent to injure. *Rhodes v. Ford Motor Credit Co.,* 951 F.2d 905, 906 (8th Cir. 1991). The "malice" or "willful intent to injure" standard is equivalent to the *New York Times* standard that a statement be made with "knowledge that it was false or with reckless disregard of whether it was false or not." *Thornton v. Equifax, Inc.,* 619 F.2d 700, 703 (8th Cir. 1980) (quoting *New York Times v. Sullivan,* 376 U.S. 254, 279-80 (1964)). The showing of malice or willful intent to injure under § 1681h(e) is a higher standard of proof than the willfulness required for punitive damages under § 1681n. *Bruce v. First U.S.A. Bank,*

---

[6] In pertinent part, this section states, "no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence . . . except as to false information furnished with malice or willful intent to injury such consumer."

*Nat'l Ass'n,* 103 F. Supp. 2d 1135, 1145 (E.D. Mo. 2000) (citing *Thornton v. Equifax, Inc.,* 619 F.2d 700, 703 (8th Cir. 1980)).

Plaintiff has put forth no evidence that MIB or Lincoln Benefit acted with malice or willful intent to injure. The undisputed evidence is that MIB and Lincoln Benefit concluded, whether erroneously or not, that the information about plaintiff's cotinine test result was accurate. Nothing plaintiff has offered indicates that MIB or Lincoln Benefit knew either that the test itself was wrong, or that either entity entertained any doubt about the veracity of the test, yet reported it anyway. In fact, plaintiff did not inform defendants that he disputed the test result until after the information was reported. There are no genuine disputes of fact that could lead a reasonable jury to determine that defendants willfully or maliciously intended to injure plaintiff. Therefore plaintiff's common law claims are preempted by the FCRA.

## II.    Defamation

Moreover, even if the defamation claim were not preempted, plaintiff has not demonstrated its elements. To successfully state a cause of action for defamation, a plaintiff must show (1) that the statement was false; (2) that it was communicated to someone besides the plaintiff; and (3) that it tended to harm the plaintiff's reputation and lower him in the estimation of the community or expose him to public hatred, contempt, ridicule, or degradation. *Rouse v. Dunkley & Bennett, P.A.,* 520 N.W.2d 406, 410 (Minn. 1994); *Phipps v. Clark Oil & Ref. Corp.,* 408 N.W.2d 569, 573 (Minn. 1987). Plaintiff

has not shown that the statement that he tested positive for cotinine injured his reputation or exposed him to public hatred, contempt, ridicule, or degradation.

In addition, Minnesota law exempts from liability those who "merely deliver or transmit defamatory material previously published by another" unless they "knew, or had reason to know, that the material was false." *Church of Scientology of Minnesota v. Minnesota State Med. Ass'n Found.,* 264 N.W.2d 152, 156 (Minn. 1978) (citing the Restatement (Second) of Torts § 581 (1977)); *see also Cole v. Star Tribune,* 581 N.W.2d 364, (Minn. Ct. App. 1998) (relying on *Church of Scientology* to recognize a "wire service" defense). A reasonable jury could not find that MIB or Lincoln Benefit knew, or had reason to know, that the information was false when it was reported. Therefore, even if the claims were not preempted, summary judgment would be appropriate on the defamation claim.

## III.   Invasion of privacy

Finally, plaintiff claims "invasion of privacy." Again, even if preemption were inappropriate, plaintiff cannot demonstrate the elements to support such claims. Invasion of privacy claims have only recently been recognized in Minnesota. *See Lake v Wal-Mart Stores, Inc.,* 582 N.W.2d 231 (Minn. 1998) ("Whether Minnesota should recognize any or all of the invasion of privacy causes of action is a question of first impression."). In *Lake,* the court referenced the Restatement (Second) of Torts for definitions of each of the four traditional invasion of privacy torts. The *Lake* court recognized a right to privacy, including causes of action in tort for intrusion upon seclusion, appropriation, and

publication of private facts. *Lake*, 582 N.W.2d at 236. Plaintiff's invasion of privacy claim could be construed as a claim for intrusion upon seclusion or publication of private facts.

### A.    Intrusion upon seclusion

"Intrusion upon seclusion occurs when one 'intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person.'" *Lake*, 582 N.W.2d at 233 (citing Restatement (Second) of Torts, § 652B (1977)). Further, the plaintiff must have a reasonable expectation of seclusion or solitude in the data source. *Swarthout v. Mutual Service Life Ins. Co.*, 632 N.W.2d 741, 744-45 (Minn. Ct. App. 2001). In this case, plaintiff knew that the results of the cotinine test would be disclosed. In fact, he authorized the disclosure. Plaintiff does not complain that the data was disclosed beyond the insurance companies. The reasonableness of plaintiff's expectation of privacy is often a jury question, but in this case, a reasonable jury could not find that plaintiff had a reasonable expectation of privacy in the data because he explicitly authorized its disclosure. *See Swarthout*, 632 N.W.2d at 745 (citations omitted) (noting that questions of reasonableness are frequently left to the jury, but they become questions of law when reasonable persons can draw only one conclusion from the evidence).

### B.    Publication of private facts

Plaintiff's invasion of privacy claim also could be construed as a claim for publication of private facts. The *Lake* court incorporated the Restatement (Second)

definition of this tort. 582 N.W.2d at 233. "'Publication of private facts' is an invasion of privacy when one gives publicity to a matter concerning the private life of another if the matter publicized is of a kind that: (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." *Id.* (quoting Restatement (Second) of Torts § 652D (1977)). Comment "a" to the Restatement addresses the issue of publicity, but the Minnesota Supreme Court has yet to delineate what facts an invasion of privacy tort claimant must allege in order to satisfy the burden of showing that "publicity" or "publication" of private information has occurred. The comment notes that to prove such a claim, plaintiff must show that defendants disclosed facts about his private life, in a communication to "the public at large, or to so many people it is substantially certain to become public knowledge." Restatement (Second) of Torts § 652D, comment a.

In *C.L.D. v. Wal-Mart Stores Inc.*, 79 F. Supp. 2d 1080, (D. Minn. 1999), this Court predicted that Minnesota courts would incorporate the more narrow interpretation of "publicity" found in comment a, and granted summary judgment to defendant where the private facts were disclosed to only a few fellow employees. The Court noted that plaintiff "does not allege that defendant disclosed [the private facts] in the media or in any other form accessible to the population at large." *C.L.D.*, 79 F. Supp. 2d at 1084. This limited disclosure did not constitute "publication." *Id.*

In the only Minnesota case to address the issue expressly, the court held that plaintiffs met the "publication" or "publicity" prong by showing that "respondent faxed the [private facts] . . . to 16 terminals in six states." *Bodah v. Lakeville Motor Express,*

*Inc.*, 649 N.W.2d 859, 865 (Minn. Ct. App. 2002). The *Bodah* court referenced the Restatement comment, but did not explicitly adopt the standard put forth in it. *Bodah*, 649 N.W.2d at 863-64 (noting that "it is important to look to the Restatement" but allowing a claim where publication was not to the public at large).

Although the exact contours of what constitutes "publication" are yet to be defined, plaintiff does not assert that the information was disclosed to anyone beyond three insurance companies. Even under the *Bodah* court's more expansive interpretation of "publication," plaintiff has not shown that defendants published the information. A reasonable jury could not find that MIB or Lincoln Benefit disclosed facts to the public, or to such a large number of people as to become public knowledge. Therefore, plaintiff cannot maintain a cause of action for publication of private facts.

## ORDER

Based on the foregoing, the submissions of the parties, and all of the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that defendants' motions for summary judgment [Docket Nos. 40, 45] are **GRANTED in part** and **DENIED in part** as follows:

1.     Defendant MIB's motion is **GRANTED** with respect to that portion of Count II relating to FCRA, 15 U.S.C. § 1681e(b); both defendants' motions are **GRANTED** as to Count IV (defamation claims), and Count V (invasion of privacy claims). Accordingly, that portion of Count II relating to FCRA, 15 U.S.C. § 1681e(b)

and Counts IV and V of plaintiff's amended complaint [Docket No. 55] are **DISMISSED**

**WITH PREJUDICE**.

    2.      Defendants' motions are **DENIED** In all other respects.


DATED: *Jan 7, 2003*
at Minneapolis, Minnesota.

                                JOHN R. TUNHEIM
                        United States District Judge